# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA

| Columbus Vanadore, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) | Civil Action No. 5:16-1991-RMG |
| vs. | ) |  |
|  | ) |  |
| Nancy A Berryhill, Acting Commissioner | ) |  |
| of Social Security, | ) | **ORDER** |
|  | ) |  |
| Defendant. | ) |  |
|  | ) |  |

Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB"). In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 DSC, this matter was referred to a United States Magistrate Judge for pre-trial handling. The Magistrate Judge issued a Report and Recommendation ("R & R") on June 30, 2017, recommending that the Commissioner's decision be affirmed. (Dkt. No. 16). Plaintiff timely filed objections to the R & R, and the Commissioner filed a response. (Dkt. No. 18, 20). For reasons set forth below, the Court reverses the decision of the Commissioner and remands the matter to the agency for further action consistent with this decision.

**Legal Standard**

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is

made. The Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. The Act provides that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes *de novo* review of the factual circumstances that substitutes the Court's findings of fact for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157, 1157 (4th Cir. 1971).

Although the federal court's review role is a limited one, "it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Further, the Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 519 (4th Cir. 1987).

Under the regulations of the Social Security Administration, the Commissioner is obligated to consider all medical evidence and the opinions of medical sources. 20 C.F.R. § 404.1527(b). The regulation requires the Commissioner to "evaluate every medical opinion we receive." *Id.* § 404.1527(c). The Commissioner pledges to give special consideration to the opinions of treating and examining physicians, noting explicitly that "we will give more weight

to the opinion of a source who has examined you than the opinion of a source who has not examined you." *Id.* 404.1527(c)(1)(2).

The Commissioner is obligated to weigh *all* medical opinions in light of a broad range of factors, including the examining relationship, the treatment relationship, length of treatment, nature and extent of the treatment relationship, supportability of the opinions in the medical record, consistency, and whether the treating physician was a specialist. *Id.* §§ 404.1527(c)(1)-(5). Further, since the Commissioner recognizes that the non-examining expert has "no treating or examining relationship" with the claimant, she pledges to weigh the opinions of non-examining physicians under the same standards as any other medical opinion and to consider the supporting explanations for their opinions and "the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and examining sources." §§ 404.1527(c)(3), (e)(2)(ii). The Commissioner is also prohibited from "playing doctor," by substituting the medical opinions of the Commissioner or the Administrative Law Judge (ALJ) for those of physicians. *Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017).

The Commissioner is also obligated to weigh and consider a claimant's subjective complaints of pain beyond consideration of objective medical evidence. Under the agency's regulatory scheme, the ALJ must first determine if there is objective medical evidence showing a condition that reasonably could produce the claimant's symptoms. If such objective medical evidence is present, the ALJ must then evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's activities. This second step requires an assessment of the claimant's credibility. 20 C.F.R. § 404.1529. In making this credibility determination, the ALJ may not require objective medical evidence to document the

intensity of the claimant's pain since this would improperly increase his burden under the regulatory scheme. *Lewis*, 858 F.3d at 866.

In weighing a claimant's capacity for physical exertion, the Commissioner classifies work into four categories: sedentary, light, medium, and heavy work. Light work requires "a good deal of walking or standing," with the full scope of light work requiring a total of approximately 6 hours in an 8 hour day. Sedentary work involves standing and walking only occasionally. 20 C.F.R. § 404.1567; SSR 83-10, 1983 WL 31251 (1983).

**Factual Background**

The claimant filed his claim for DIB on November 14, 2012, just before his fiftieth birthday, and was 52 years of age on his date last insured, December 31, 2014. Plaintiff alleged a whole litany of upper and lower extremity impairments as well as mental health impairments. Following an administrative hearing on January 20, 2015, the ALJ issued a decision on March 12, 2015 denying Plaintiff's claim for DIB. In reaching that conclusion, the ALJ found that the claimant suffered from a number of severe physical impairments, including degenerative changes in his lumbar spine, a history of lower back muscle strain, cervical spondylosis, status post left radius fracture, and carpal tunnel syndrome. The ALJ further found Plaintiff suffered from severe mental health impairments, anxiety disorder and depression. Tr. 58. Despite these numerous severe physical and mental impairments, the ALJ found that Plaintiff retained the residual functional capacity to perform less than the full scope of light work. These limitations from the full scope of light work included only occasional ramps, stairs, stooping, kneeling and crawling and an avoidance of climbing and extreme heat or cold. Tr. 61.

The record contained considerable evidence relating to the Plaintiff's capacity to stand and walk for any sustained period of time. Plaintiff testified that due to his severe back and neck impairments and pain, he could stand no longer than 20-30 minutes and could walk no longer than 25-30 yards. He stated that his back hurts constantly and he is presently unable to engage in previous activities of fishing and gardening because of his pain. Tr. 89-93.

Dr. Harish Mangipudi, who performed a medical examination of Plaintiff on February 16, 2013 at the request of the Social Security Administration, found evidence of structural deformity in the manner Plaintiff walked and the presence of both cervical and low back paraspinal tenderness. He also documented the presence of abnormal gait and station and that the claimant was unable to stand on his tiptoes and heels or tandem walk without problems. Plaintiff was also unable to bend and squat without difficulty. Tr. 392. An evaluation of Plaintiff's range of motion revealed the presence of markedly abnormal limitations in flexion and extension in Plaintiff's cervical and lumbar spine. Tr. 395. Dr. Mangipudi also reviewed objective medical evidence from Plaintiff's Social Security disability application file, which included an MRI of the lumbar spine showing degenerative changes at L2-3, L4-5, and L5-S1 and a plain film of the cervical spine showing spondylosis with neural foraminal impingement. Tr. 350, 374. Based on his examination and the objective evidence in the record, Dr. Mangipudi opined that the claimant "is unable to stand for the full workday." He further concluded that Plaintiff had the capacity to sit for the full workday. Tr. 394.

Plaintiff's complaint's of severe back and neck pain were consistently documented in his medical record. A physical therapist noted in 2012 that Plaintiff experienced significant pain when returning to a standing position and with active extension. Providers at the Free Medical

Clinic documented in 2013 and 2014 that Plaintiff's pain was worse with extension and he had positive straight leg raises and lower extremity weakness. Tr. 467, 484, 504, 552.

The only contrary evidence in the record regarding Plaintiff's capacity to sustain standing and walking through the workday was provided by two in-house non-examining and non-treating physicians. Both concluded that Plaintiff could stand and walk up to 6 hours in an 8 hour day but provided no evidentiary support for those opinions regarding the length of time Plaintiff could stand and walk. Tr. 127-129, 146-149.

The ALJ found that Plaintiff "can stand/walk for a maximum total of six hours in an eight hour workday . . ." Tr. 61. In reaching that conclusion, the ALJ, the ALJ gave "little weight" to the opinion of Dr. Mangipudi that Plaintiff could not stand for the full workday, contending that it was "inconsistent with [his] own exam finding of normal lower extremities and with the remainder of the evidence." Tr. 69. He further noted that Dr. Mangipudi's opinion regarding Plaintiff's capacity to stand was provided "before the claimant had left carpal tunnel surgery." *Id.* The ALJ also noted the opinion of the non-examining in-house physicians regarding Plaintiff's capacity to stand for 6 hours in an 8 hour day. Tr. 70. The ALJ did, however, give "significant weight" to Dr. Mangipudi's opinion that Plaintiff could sit for the full workday. Tr. 69.

The ALJ also found Plaintiff's statement regarding his difficulties with standing and walking not to be credible, stating that they were not "consistent with objective medical findings." Tr. 62. The ALJ further observed that he found it "significant" that Plaintiff claimed disabling impairments but was still "able to care for his [disabled] wife" without "any particular assistance." Tr. 66.

The Commissioner ultimately adopted the decision of the ALJ as the final decision of the agency. Thereafter, Plaintiff timely appealed the adverse decision to this Court, which is now presented for a final determination.

## Discussion

It is important at the outset to note the narrow differences between the parties on the issue of whether Plaintiff is disabled. The Commissioner, recognizing that Plaintiff has multiple severe physical and mental impairments, found that nonetheless the claimant has the capacity for less than the full scope of light work. Plaintiff asserts that he is capable of only sedentary work, which he asserts would render him disabled due to his age and other factors. The critical difference between the parties lies in Plaintiff's capacity to sustain standing and walking approximately 6 hours in an 8 hour day.

In reaching the conclusion that Plaintiff could walk and stand 6 hours a workday, the ALJ, by necessity, had to reject the opinion of the only examining physician in this record, Dr. Mangipudi, and to find the Plaintiff's testimony regarding his limited capacity to stand and walk not credible. Under these circumstances, the Court is required to consider whether the ALJ properly evaluated Dr. Mangipudi's opinions under the requirements of § 404.1527(c) and properly considered Plaintiff's subjective complaints of pain under § 404.1529. As discussed more fully below, the Court finds that the Commissioner failed to satisfy the legal requirements for the evaluation of an examining physician's opinions and the credibility of the claimant, providing separate and independent bases for the reversal of the Commissioner's decision.

A.  The Commissioner's decision to provide "little weight" to the opinion of Dr. Mangipudi regarding Plaintiff's capacity to stand for the full workday violated the provisions of § 404.1527 and is not supported by substantial evidence.

Dr. Mangipudi, a physician selected to examine Plaintiff by the Social Security Administration, conducted a detailed review of the claimant's medical history and records and performed a comprehensive medical examination. He found multiple abnormalities in the patient's gait and station, documented structural deformities in his walking, recorded significant limitations on range of motion in the cervical and lumbar spine, noted the claimant's inability to bend or squat without difficulty, and concluded that Plaintiff had paraspinal tenderness in his cervical and lumbar spine. Tr. 392-394. He also reviewed radiographic reports from the agency's records, which included findings of degenerative changes in the lumbar spine and degeneration and nerve impingement in his cervical spine. Tr. 350, 374. Dr. Mangipudi then concluded, based on "today's examination and the objective evidence," that the claimant "is unable to stand for the full workday." Tr. 394.

The ALJ's evaluation of the opinion of Dr. Mangipudi concerning Plaintiff's capacity to stand for a full workday is replete with legal errors, each which is sufficient to require reversal and remand. First, the ALJ accorded no weight to the fact that Dr. Mangipudi was an examining physician, and adopted uncritically the opinions of the non-examining physicians regarding Plaintiff's capacity to stand. The ALJ's decision did not address how his obligation to give special weight to an examining physician impacted his weighing of the opinions of the examining and non-examining physicians. § 404.1527(c)(1). Second, the ALJ's statement that Dr. Mangipudi's examination findings were not consistent with his opinion regarding Plaintiff's

capacity to stand is not supported by substantial evidence. In fact, Dr. Mangipudi's examination findings, summarized above, were consistent with his opinion that Plaintiff's severe lumbar and cervical spine abnormalities significantly impact the claimant's capacity to stand for a sustained period of time. Third, the ALJ rejected Dr. Mangipudi's opinion regarding Plaintiff's capacity to stand on the dubious basis that it was rendered before the claimant had left carpal tunnel surgery. Tr. 69. The ALJ offers no explanation how the Plaintiff's carpal tunnel surgery would impact the claimant's capacity to stand, and any potential relevance of the carpal tunnel surgery to the capacity to stand issue escapes this Court. Fourth, the ALJ's statement that the absence of documented lower extremity abnormalities renders Dr. Mangipudi's opinions unworthy of consideration appears to be the classic "playing doctor" situation. Dr. Mangipudi clearly based his opinion that Plaintiff could not stand for the full workday on Plaintiff's spinal abnormalities without regard to any lower extremity abnormalities. The issue of whether spinal abnormalities alone could account for Plaintiff's standing difficulties is a matter of medical judgment, and it was improper for the ALJ to find that in the absence of documented lower extremity abnormalities Dr. Mangipudi's opinion is without merit. *Lewis*, 858 F.3d at 869. Fifth, the ALJ's decision to give significant weight to Dr. Mangipudi's opinion that Plaintiff has the capacity to sit for a full workday while according little weight to his opinion that the claimant cannot sustain standing for the full workday is the type of "cherry picking" of the evidence the Fourth Circuit soundly rejected in *Lewis*. *Id.*

On remand, the Commissioner is directed to evaluate the opinions of Dr. Mangipudi under the standards set forth in § 404.1527(c) and to weigh the full evidence in the record without cherry picking or "playing doctor" where there may be disagreement with a physician's

opinions.[1]

> **B.** **The Commissioner, by using objective medical evidence to weigh Plaintiff's subjective complaints of pain under the second prong of § 404.1529, improperly increased the claimant's burden of proof.**

It is well known that the Fourth Circuit has battled the Commissioner over the years concerning the proper method to evaluate a claimant's subjective complaints of pain. *Mickles v. Shalala*, 29 F.3d 918, 919 (4th Cir. 1994) (Hall, J,. concurring). Recently, this issue was revisited in *Lewis v. Berryhill*, with the Fourth Circuit holding that under the two step process provided in § 404.1529 to evaluate a claimant's subjective complaints of pain, the claimant must first demonstrate the objective evidence showing that his condition could reasonably produce the symptoms alleged. Once that threshold has been satisfied, the Plaintiff's credibility must be weighed considering the intensity of the pain, and it is improper to use objective evidence to prove the absence of such intensity of the claimant's pain. Otherwise, the Fourth Circuit ruled, this would "improperly increase[]" the claimant's burden of proof. 858 F.3d at 866.

Although the ALJ's decision is muddled on this point, it appears that he found there was objective evidence to support Plaintiff's symptoms of pain but then concluded that Plaintiff was not "fully credible" regarding the extent of symptoms present. Tr. 65-67.[2] However, in reaching

---

[1] Dr. Mangipudi did not expressly state in his opinion the number of hours of standing Plaintiff could sustain in a normal workday. Instead, he simply opined that he lacked the capacity to stand for "a full workday." Tr. 394. Since the number of hours Plaintiff could stand in a normal workday could well determine if Plaintiff could meet the standards for light or even sedentary work, the ALJ on remand should communicate with Dr. Mangipudi and determine if the physician might provide a more detailed opinion on Plaintiff's daily capacity to stand.

[2] To the extent that the ALJ found that there was not objective evidence in the record to support the first prong of § 404.1529, such a finding would not be supported by substantial evidence. *See* Tr. 350, 374, 392-95, 467, 484, 504.

his credibility conclusion, the ALJ pointed to the absence of certain objective medical evidence, specifically the absence of disc herniation on the lumbar spine MRI and minimal evidence of radiculopathy in the lower extremities. As the Fourth Circuit clearly held in *Lewis*, once the first prong of § 404.1527 is satisfied, it is improper to use the presence or absence of objective medical evidence to weigh the claimant's credibility.

On remand, the Commissioner is directed to weigh Plaintiff's subjective complaints of intense and unremitting pain under the standards of § 404.1529, as interpreted by the Fourth Circuit most recently in *Lewis*.

**Conclusion**

Based on the foregoing, the Court **REVERSES** the decision of the Commissioner pursuant to Sentence Four of 42 U.S.C. § 405(g) and **REMANDS** the matter to the Commissioner for further action consistent with this order.[3] In light of the pendency of this application of DIB for nearly five years, the agency is directed to conduct an administrative hearing on remand and to issue a decision by the ALJ within 90 days and a final agency decision within 120 days.

AND IT IS SO ORDERED.

---

[3] The ALJ additionally supported his credibility findings regarding the intensity of Plaintiff's complaints of pain on the basis that he found it "significant" that the claimant was able to care for his disabled wife without assistance. Tr. 66. The record provides no indication whether Plaintiff has a choice in this matter. Surely a decision regarding a claimant's disability application should not turn on whether he provides essential care for a bedridden and wheelchair bound spouse. Elemental decency and common sense suggest this is not a proper basis to deny a claimant's disability application.

_____
Richard Mark Gergel
United States District Judge

Charleston, South Carolina
July 31, 2017